**AUTOMATIC SPRINKLER CORPORA-
TION OF AMERICA, A DIVISION OF
FIGGIE INTERNATIONAL, INC.,**
Plaintiff/Judgment Creditor,

v.

**DARLA ENVIRONMENTAL SPECIAL-
ISTS, INC., and Darla Environmental,
Inc.,** Defendants/Judgment Debtors,

v.

**GENERAL SERVICES ADMINISTRA-
TION, Third Party Respondent.**

No. 91 C 3602.

United States District Court,
N.D. Illinois,
Eastern Division.

May 13, 1994.

Joseph R. Marconi, Gerald Theodore Tschura, Johnson & Bell, Ltd., Chicago, IL, for plaintiff.

Steve Mason, U.S. Attorney's Office, Chicago, IL, for General Services Admin., respondent.

MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

The Darla defendants completed some work for the government and GSA has paid them about six and a half million dollars for it and owes another half million ($449,814.88 to be exact). GSA has not paid Darla because it appears to exist no longer, dissolved by the Illinois Secretary of State, and, consequently, has not requested payment. This court enjoined payment of the remainder because Automatic Sprinkler has a claim to the money; a good claim, in fact, to enforce an Ohio state court judgment for half a million dollars ($449,044 and costs, to be exact) in favor of Automatic Sprinkler and against Darla. Automatic Sprinkler asked GSA to pay the Darla money to it. GSA has refused. Automatic Sprinkler wants a court order to force GSA to pay, and GSA responds that it is above it all (or immune as a sovereign, to be exact).

The argument between GSA and Automatic Sprinkler is phrased as an argument over labels. GSA says it is a "party defendant" and thus immune. Automatic Sprinkler says GSA is a "third-party respondent in a supplemental proceeding, to wit, a citation to discover assets." Labels are essential for computer directories and other filing systems but have very little use as reasons for a decision. Sometimes a label serves as a shorthand or symbol for a reason, but that is not so here. The argument here is all label and nothing more. GSA says, in essence, you can look at the Federal Rules of Civil Procedure until you are blue in the face and you will not see the words "Third Party Respondent" anywhere. Automatic Sprinkler rightly says that Rule 69 incorporates state law for enforcement of judgment and Illinois law recognizes "Third Party Respondents." *Bank of Aspen v. Fox Cartage, Inc.,* 141 Ill.App.3d 369, 95 Ill.Dec. 672, 490 N.E.2d 145 (1986). Another, and more important, version of the label argument is this: GSA says Automatic Sprinkler wants the "government's money"; Automatic Sprinkler says it wants "Darla's money."

The question, "Whose money is it?" is not new. In 1846 the Court held that creditors of the crew members of the frigate "U.S.S. Constitution" could not garnish the crew's wages. *Buchanan v. Alexander*, 45 U.S. (4 How.) 20, 11 L.Ed. 857 (1846). The Court reasoned:

> the funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by State process or otherwise, the functions of the government may be suspended. So long as money remains in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the treasury. Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects. The purser is not the debtor of the seamen.

GSA is the purser here, and the authority of *Buchanan* seems not to have been impaired by its great age. *In Re Joliet–Will County Community Action Agency*, 847 F.2d 430, 433 (7th Cir.1988). *Buchanan*'s language can be mined in more than one way. The key sentence might be "so long as the money remains in the hands of a disbursing officer, it is . . . the money of the United States." But what about "if appropriations may be diverted . . . by State process, . . . the functions of government may be suspended"? This is the reason state process is dishonored (or disregarded, if one prefers a less loaded word).

Garnishing seamen's wages is quite likely to have grim effects on the functioning of government. Even where money is due for past work, the crew is a continuing entity on which the government depends for the completion of its cruises. And the public can protect itself by denying credit to sailors.

Here a contractor, with no continuing relationship to the government, or anyone else, has completed all its assigned work. What

danger is there to the government's functioning? The answer is none. Of course, there is a risk, approaching certainty, that a win for Automatic Sprinkler will lead to attempts to extend the holding. One could argue that the facts here, a defunct contractor who has finished work, are merely fortuitous. State process should be allowed where there is *either* a defunct contractor *or* a completed contract. And surely someone will try to tell a court there is no difference between completed work and substantially completed work.

I think the conjunction of defunct contractor and completed work is not insignificant and this case illustrates why. Darla is dead and gone, it makes no claim on government funds. In *Buchanan* the purser, presumably, paid the seamen. GSA will not pay Darla, it will keep the money, a half million dollar windfall.[1]

The reasoning of *Buchanan* supports Automatic Sprinkler's claim, but there is clear language in the opinion which defeats it. Do I follow rule, or do I follow reason?

The common law tradition instructs me to follow the reason of the prior precedent, to find the key facts in the earlier case, compare them to the key facts in this one, and determine whether there are differences or similarities and whether these are important judged in the light of the generally accepted context of law. But all this is a little messy. Analogy may be drawn in more than one way and the accepted context of law is always fuzzy around its edges and changes over the years, sometimes at considerably more than glacial speed.

Common law's rival is positive law, which is clear rule announced by high authority and followed until it is changed. Positive law fails when the rule is not clear, but I don't have to worry about that now. The rule in *Buchanan* is easy to apply here and, under positive law conventions, I cannot second guess the plain language of the rule.[2]

---

1. Darla actually owes $226,123.26 in taxes to the United States which would either be able to take it outright or argue in court that its claim has priority over Automatic Sprinkler's claim. In any event, there is still a sizable stake left over

for Automatic Sprinkler and a sizable windfall for the United States.

2. A very fine exposition of the common law-positive law contract is found, along with other good work, in Linda Meyer, "Nothing We Say

Once in America we were definitely common law; positive law was French (or German or Roman), foreign, not us. But we have changed. There is more legislation which is usually positive law; there is more argument for early high court intervention to resolve, once and for all, conflicts in lower court opinions. And Supreme Courts of all stripes have now decided cases with opinions that announce elaborate positive law rules to govern future cases. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), comes to mind.

To decide whether to apply common law or positive law principles in this case, I look to the authoritative precedent, *Buchanan*, and what I see is an opinion issued and written by justices in a system dominated by common law, and ruling on a question of the scope of a judge-made common law rule. Judged in this context, it is anachronism to construe the opinion as stating a positive rule that money in the hands of the disbursing officer is always and ever the money of the United States no matter what the other facts of the case may be.

Under common law principles Darla has the better case than GSA, and, subject to United States intervention to protect its tax lien, I order GSA to turn over the funds in question to Automatic Sprinkler.

Matters": *Teague* and New Rules, 61 U.Chi. L.Rev. 423, 459–76 (1994).